# Exhibit A

Lisa S. Wahlin, State Bar No. 013979
Erin E. Byrnes, State Bar No. 021015
**GRAIF, BARRETT & MATURA, P.C.**
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
Tel: (602) 792-5700
Fax: (602) 792-5710
Email: lwahlin@gbmlawpc.com
*Attorneys for Defendants Maricopa County and Cincy Rodriguez*

Daniel P. Struck, State Bar No. 012377
Rachel Love, State Bar No. 019881
Amy L. Nguyen, State Bar No. 023383
**STRUCK WIENEKE & LOVE, P.L.C.**
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1696
minuteentries@swlfirm.com
*Attorneys for Defendants Joseph and Ava Arpaio, Karyn Schwartz (fka Karyn Kleinschmidt), Randal Harenberg, Sandra Garfias, Diane Galaviz, Stefanie Leppert, Lucy Akpan and Carlene Harenberg*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF PINAL**

| | |
|---|---|
| JENNIFER BRAILLARD, personal representative of the Estate of Deborah Ann Braillard, Deceased; JENNIFER BRAILLARD, surviving daughter of Deborah Ann Braillard,<br><br>Plaintiffs,<br><br>v.<br><br>MARICOPA COUNTY, a public entity; MARICOPA COUNTY SHERIFF'S OFFICE, a division of Maricopa County, et al.<br><br>Defendants. | **Case No. CV2006-01548**<br><br>**DEFENDANTS' JOINT MOTION TO BIFURCATE PLAINTIFFS' *MONELL* CLAIMS AGAINST MARICOPA COUNTY AND SHERIFF ARPAIO**<br><br>(Assigned to the Honorable Gilbert V. Figueroa) |

Plaintiffs have asserted two separate and distinct categories of federal claims under 42 U.S.C. § 1983. The first category of claims alleges that the individual defendants (nurse, detention officers, and Sheriff Arpaio) were deliberately indifferent to Deborah Braillard's medical needs, which violated her constitutional rights. The second category

of claims alleges that Maricopa County and Sheriff Arpaio implemented unconstitutional policies and practices in the Maricopa County jails (*Monell* claims). As *Monell v. New York Dep't of Social Services* and its progeny establish, Plaintiffs' custom and policy claims against Maricopa County and Sheriff Arpaio cannot succeed unless Plaintiffs can prove that a violation of Deborah Braillard's constitutional rights occurred. *Monell*, 436 U.S. 658, 691 (1978).

To prove their *Monell* claims against Maricopa County and Sheriff Arpaio, Plaintiffs ***must*** first prove that the individual defendants, through their own actions or inactions, violated decedent's constitutional rights. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell* nor any other of our cases authorize the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (internal citation omitted; emphasis in original). If Plaintiffs fail to prove that the individual defendants violated decedent's constitutional rights, their *Monell* claims against Maricopa County and Sheriff Arpaio necessarily fail as a matter of law. *Id.*

Accordingly, pursuant to Arizona Rule of Civil Procedure 42(b), Defendants request that this Court bifurcate the trial, as most courts that have considered this issue have done. The Court should hold two separate trials of Plaintiffs' § 1983 claims. The first trial would address only the claims against the individual defendants and would determine whether their conduct violated Deborah Braillard's constitutional rights and/or was negligent. If the jury finds that a constitutional violation occurred, the second trial would then address Plaintiffs' *Monell* claims against Maricopa County and Sheriff Arpaio. If, on the other hand, the jury finds that no constitutional violation occurred, the *Monell* claims necessarily fail as a matter of law and a second trial would be unnecessary. Defendants estimate that bifurcation could shorten the trial by at least two weeks. Bifurcation will maximize the efficiency of the trial, and minimize the inherent prejudice

to the individual defendants of the introduction of custom and policy evidence against Maricopa County and Sheriff Arpaio.

## I. FACTUAL BACKGROUND

This matter arises out of the death of Deborah Braillard, an insulin-dependent diabetic who was arrested on January 1, 2005 and booked into jail for possession of two golf-ball sized pieces of methamphetamine. During her booking and subsequent detention in the Maricopa County jail system, the decedent hid her diabetes as part of a longstanding plan to try to avoid jail time by becoming ill and thus being transferred from jail to a hospital. As a result of her deceit, the decedent did not receive the care and treatment for diabetes that is routinely given to pretrial detainees and inmates until it was too late.

The decedent's daughter brought claims against the individual defendants – nurses and detention officers who were working in the jail during the decedent's incarceration – for negligence, gross negligence, and violations of 42 U.S.C. § 1983 for their alleged deliberate indifference to the decedent's medical needs.[1] Plaintiffs have also asserted claims against Maricopa County and Sheriff Arpaio, pursuant to § 1983, for implementing jail customs and policies that were allegedly deliberately indifferent to the decedent's right to receive adequate medical care.

## II. PLAINTIFFS' *MONELL* CLAIMS AGAINST MARICOPA COUNTY AND SHERIFF ARPAIO SHOULD BE BIFURCATED FROM THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim…or of any separate issue or of any number of claims…." Ariz. R. Civ. P. 42(b); *see, e.g.*, *Cota v. Harley Davidson*, 141 Ariz. 7, 11, 684 P.2d 888, 892 (App. 1984); *Woods v. Harker*, 22 Ariz.App. 83, 86, 523 P.2d 1320, 1323 (1974). The commentary to Rule 42(b) further instructs: "While separation of issues for trial is not to be routinely ordered, ***it is encouraged where experience has demonstrated its worth.***" Ariz. R. Civ. P. 42(b) cmt. (emphasis added). Courts have found bifurcation to be worthwhile where both individual and *Monell* claims are at issue, as they are here.

---

[1] Plaintiffs voluntarily dismissed their claims against Nurse Gloria Eppinger.

In *Monell*, the Supreme Court held that a municipality may be directly liable under 42 U.S.C. § 1983 only when the "execution of a government's policy or custom" inflicts the constitutional injury at issue in the case. 436 U.S. at 694. Similarly, a policymaker may be liable in an official capacity if "policy or custom . . . played a part in the violation of federal law." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). "*Monell* claims" have been held "particularly well suited for bifurcation because the evidence needed to show a 'policy and custom' on behalf of the municipal entity [or policy maker] is often unnecessary in the suit against the individual official. Furthermore, if a plaintiff fails to show that a constitutional violation occurred in the suit against the individual official, the corresponding cause of action against the municipality [or policy maker] will be mooted." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 320 (2nd Cir. 1999).

In *Sanchez v. City of Riverside*, 596 F.Supp. 193, 194 (C.D. Cal. 1984), the court granted the defendants' motion to bifurcate a *Monell* claim from the trial on the individual police officer's liability, finding that "establishing (and defending against) the City's liability under *Monell* would be a time-consuming exercise which would, in all probability, be rendered moot by the resolution of plaintiffs' claims against the individual police officer." Likewise, in *Ismail v. Cohen*, 706 F.Supp. 243, 251 (S.D.N.Y. 1989), the court ordered separate trials of the § 1983 claims against individual police officers and the City of New York, noting the "danger that evidence admissible on the issues relating to conduct by the City or Officer Cohen will 'contaminate' the mind of the finder of fact in its consideration of the liability of the other defendant." The *Ismail* Court explained that, for example, evidence concerning a City policy encouraging discrimination, or evidence that the City failed to adequately train its officers, could prejudice the jury in its determination of the culpability of individual defendant Officer Cohen. *Id.* The *Ismail* Court further explained that, conversely, if the jury determined that Officer Cohen was culpable, that finding might unfairly influence the jury's determination of whether the City had a policy leading to discriminatory treatment. *Id.*

Here, a separate trial on the liability of the individual defendants will either dispose

of, or establish a necessary element of, Plaintiffs' *Monell* claims against Maricopa County and Sheriff Arpaio: whether conduct by the individual defendants amount to a constitutional deprivation or negligence. *See Heller*, 475 U.S. at 799. A separate trial will also prevent prejudice to the individual defendants. Substantially different evidence – much of which will be highly prejudicial to the individual defendants – is required to prove Maricopa County and Sheriff Arpaio's liability under *Monell*. Thus, bifurcation will further the goals of expediency and judicial economy and will avoid the danger of unfair prejudice.

**A. Bifurcation Will Preserve the Resources of the Court and the Parties.**

As previously discussed, the claims against the individual defendants should be tried first because establishing the individual defendants' liability, or lack thereof, will either dispose of or prove a necessary element of Plaintiffs' *Monell* claims. Trying the individual claims first is undeniably most efficient, as each claim requires substantially different evidence.

Plaintiffs' § 1983 claims against the individual defendants require proof that they each acted with deliberate indifference to decedent's medical needs during her incarceration in January of 2005. Evidence in support of or against these claims will necessarily include testimony from witnesses having personal knowledge of the events surrounding decedent's medical condition, arrest, incarceration and medical treatment before her death. In contrast, Plaintiffs' *Monell* claims against Maricopa County and Sheriff Arpaio require proof that they implemented unconstitutional customs and policies which inflicted or played a part in the constitutional deprivation. *Monell*, 436 U.S. at 694; *Larez*, 946 F.2d at 646. Evidence in support of or against these claims will necessarily include testimony from witnesses about the policies, customs and practices of Correctional Health Services and the Maricopa County Sheriff's Office prior to decedent's incarceration in January of 2005.

Thus, bifurcating the two categories of claims will allow the Court and parties to avoid taking valuable trial time to present evidence on claims that may never be reached. Indeed, as one court has aptly observed, "by first litigating the claims against individual

officers, the parties may never reach the *Monell* claims. This order of presentation thus conserves the resources of both the parties and the court." *Jones v. City of Chicago*, No. 98 C 5418, 1999 WL 160228, at *2 (N.D. Ill. Mar. 10, 1999); *see also Daniels v. Loizzo*, 178 F.R.D. 46, 49 (S.D.N.Y. 1998) ("Because a second trial may be unnecessary, the parties and the Court may benefit from a bifurcated trial process."). Efficiency is always an important goal, but it is even more critical in these dire economic times during which Arizona's court system has lost resources due to massive budget cuts, and jurors empanelled for a lengthy trial will likely suffer financial hardships.

**B. Bifurcation Will Prevent Prejudice to the Individual Defendants.**

Although the parties have not yet filed their final lists of exhibits to be used at trial, Plaintiffs Rule 26.1 disclosures list a plethora of proposed evidence that is relevant only to the *Monell* claims against Maricopa County and Sheriff Arpaio. Such evidence includes, among other things: (1) the testimony of Dr. Todd Wilcox, who is the former medical director of Maricopa County Correctional Health Services, regarding the alleged general failings of Maricopa County's correctional health system and the resignation letter he submitted to the County in February 2008; (2) portions of unrelated past litigation, including a settlement agreement between Maricopa County and the Department of Justice entered in 1999, and an amended stipulated judgment in the federal class action captioned *Hart v. Hill* (aka *Graves v. Hill*), which was entered in January 1995; and (3) reports of past jail conditions, which include the March 2000 report prepared by Jacqueline Moore, the August 2003 report of Jon Bosch and Dennis Liebert, and a letter written by the Department of Justice to the Maricopa County Board of Supervisors with regard to jail conditions in 1996.[2]

Additionally, it is anticipated that the following witnesses will be called to testify to support or contest Plaintiffs' *Monell* claims: Joseph Arpaio, Jacqueline Moore, Gerard Sheridan, Todd Wilcox, Bill Williams, Joanne Dorman and Margaret Green. It is important to note that none of these witnesses have personal knowledge of Deborah

---

[2] Defendants are not conceding that this evidence is admissible, but it is clear that Plaintiffs will attempt to introduce some or all of this evidence in support of their custom and policy claims.

Braillard's incarceration in the Maricopa County Jail in January of 2005, and the majority of the witnesses will only be testifying to the policies, customs and training of Maricopa County and Sheriff Arpaio.

Such evidence, if admitted, will have no probative value with respect to Plaintiffs' claims that the individual defendants were deliberately indifferent to Deborah Braillard's constitutional rights. Its admission, however, would be highly prejudicial, as it would likely taint the jury's view of the individual defendants and their conduct. In other words, there is a high probability that such *Monell*-related evidence, which is inadmissible against the individual defendants on Plaintiffs' claim of deliberate indifference or negligence, will prejudice the individual defendants if the jury believes that Maricopa County and Sheriff Arpaio's customs, policies and procedures pertaining to medical care in the jails may have been improper at the time of, and several years prior to, the decedent's incarceration.

This risk of unfair prejudice to the individual defendants will be eliminated only if the Court bifurcates the trial of the *Monell* claims against Maricopa County and Sheriff Arpaio from the remaining claims against the individual defendants. The risk of such prejudice cannot be eliminated via the use of a limiting instruction to the jury. The anticipated breadth of the *Monell*-related evidence is too far-reaching to reasonably presume the jury will be able to keep track of which evidence should be considered only with respect to the *Monell* claims against Maricopa County and Sheriff Arpaio, and which evidence may bear on the constitutional liability of the individual defendants based on their own conduct.

In addition, the jury will likely be confused if they are allowed to hear *Monell*-related evidence prior to determining whether the individual defendants committed constitutional violations. As an example, information on training requirements and programs implemented by MCSO and CHS, which ***does not*** reflect the training ***actually received*** by the individual defendants, may be admissible against Maricopa County and Sheriff Arpaio to prove Plaintiffs' § 1983 claim of negligent hiring, training, and supervision. *See, e.g., Amato,* 972 F.Supp. at 124; *Carson v. City of Syracuse,* No. 92 Civ.

777, 1993 WL 260676, at *3 (N.D.N.Y. July 7, 1993). The same evidence, however, would not be relevant to the claims against the individual defendants and would likely be excluded in a trial against the individual defendants because of its prejudicial nature and limited probative value. *See* Ariz. R. Evid. 403.

**C. Bifurcation Will Not Prejudice Plaintiffs.**

Plaintiffs would suffer no prejudice if the Court and the parties are spared the substantial burdens involved in litigating their *Monell* claims until after the underlying constitutional claims against the individual defendants have been tried.

First, Plaintiffs will suffer no delay or prejudice in the pursuit of their claims. Discovery is already complete. If the first trial results in a defense verdict, bifurcation would actually save Plaintiff from expending unnecessary resources to litigate Maricopa County and Sheriff Arpaio's liability on the *Monell* claims. And in the event the first trial results in a verdict for Plaintiffs, the Court could order that the trials occur "back-to-back" with the same jury so that proof need not be repeated in the second trial.

Second, Plaintiffs' potential recovery of damages would not be affected by proceeding first against the individual nurse and detention officer defendants. As a matter of law, even if Plaintiffs' *Monell* claims are ultimately proven at trial, Plaintiffs are not entitled to recover any additional compensatory damages in excess of what may be recovered against the individual defendants. *See Spanish Action Comm. of Chicago v. City of Chicago,* 766 F.2d 315, 321 (7th Cir. 1985); *Jones v. City of Chicago,* 856 F.2d 985, 995 (7th Cir. 1988) (policy claim against City of Chicago "has little, probably no, practical consequence" when considering damages because the City indemnifies its employees for torts committed within the scope of their employment). Further, Maricopa County is not required to pay punitive damages under any circumstances, and punitive damages cannot be awarded against Sheriff Arpaio in his official capacity, so bifurcation of Plaintiffs' *Monell* claims would also not affect Plaintiffs' ability to recover punitive damages. *City of Newport v. Facts Concerts,* 453 U.S. 247 (1981). In short, bifurcation would not prejudice Plaintiffs, and could potentially reduce Plaintiffs' costs.

///

## III. CONCLUSION

Defendants respectfully request that the Court bifurcate the trial so that the jury may resolve Plaintiffs' constitutional claims against the individual defendants before engaging in the costly and more time-consuming trial of the *Monell* claims against Maricopa County and Sheriff Arpaio. Bifurcation will promote judicial economy, save fees and costs, and could potentially prevent the jury from having to sit through five weeks of trial.

RESPECTFULLY SUBMITTED this 3rd day of November, 2011.

**GRAIF BARRETT & MATURA, P.C.**

By [signature]
Lisa S. Wahlin
Erin E. Byrnes
1850 North Central Avenue, Suite 500
Phoenix, Arizona 85004
*Attorneys for Defendants Maricopa County and Cincy Rodriguez*

**STRUCK WIENEKE & LOVE, P.L.C.**

By [signature] for
Daniel P. Struck
Rachel Love
Amy L. Nguyen
3100 W. Ray Road, Suite 300
Chandler, Arizona 85226
*Attorneys for Defendants Joseph and Ava Arpaio, Karyn Schwartz, Randal Harenberg, Carlene Harenberg, Sandra Garfias, Diane Galaviz, Stefanie Leppert, and Lucy Akpan*

Original of the foregoing Mailed this 3rd day of November, 2011 for filing with:

Clerk of the Court
Pinal County Superior Court
P.O. Box 1583
Florence, AZ 85132

Copies of the foregoing mailed this 3rd day of November, 2011 to:

Michael C. Manning, Esq.
Larry J. Wulkan, Esq.
STINSON MORRISON HECKER, LLP
1850 N. Central Ave. Suite 2100
Phoenix, AZ 85004-4584
*Attorneys for Plaintiffs*

Daniel P. Struck, Esq.
Rachel Love, Esq.
Amy L. Nguyen, Esq.
STRUCK WIENEKE & LOVE, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
*Attorneys for MCSO Defendants*

By ______________________

4844-4425-1917, v. 1

**Filed on 2/23/2012 4:57:06 PM**

# IN THE SUPERIOR COURT

**PINAL COUNTY, STATE OF ARIZONA**

**Date: 02/22/2012**

**THE HON GILBERTO V FIGUEROA,**
**Courtroom: 2A**
Court Reporter: MICHELLE WELLNER

**CHAD A ROCHE, CLERK**
By Deputy Clerk: GINA LAUGHLIN

**JENNIFER BRAILLARD, personal representative of the Estate of Deborah Ann Braillard, surviving daughter of Deborah Ann Braillard,**
**Plaintiff(s),**

**vs.**

**MARICOP COUNTY, a public entity, MARICOPA COUNTY SHERIFF'S OFFICE, a division of Maricopa County, et al.,**

**Defendant(s).**

**S1100CV200601548**

**MINUTE ENTRY ACTION:**

**CONTINUATION OF MOTIONS IN LIMINI**

PRESENT:

Plaintiff appearing by counsel, Leslie O'Hara and Michael C. Manning.

Defendants, Maricopa County/ Cincy Rodriguez, appearing by counsel, Lisa Wahlin, Pam Hostallero and Amy Nguyen.

Defendants, Joseph and Eva Arpaio, appearing by counsel Daniel P. Struck.

10:06 a.m. Court convenes.

The Court states it had an opportunity to review the new Motion to Strike. As of yesterday, they left off having finished the motion for both defendants and will now proceed with the motions in limini for the plaintiff, and move on to the Motion to Bifurcate and the Motion to Strike.

Plaintiff's MOTION IN LIMINI TO PRECLUDE USE OF ALLEGED STATEMENTS BY DEBORAH BRAILLARD AGAINST HER ESTATE is presented to the Court.

Arguments of counsel.

The Court is inclined to admit the statements solely for the purpose of attempting to establish that the victim was not going to tell anybody about her diabetes, but not for any purpose that she had in mind as to avoid telling. The statement is marginally admissible, and marginally relevant. The plaintiff is correct that it can introduce the fact that she did not tell anybody being more probative that she didn't tell anybody.

IT IS HEREBY ORDERED the defendants are allowed to use statements from Robert Selman or another witness that the victim made the statement saying she was not going to tell people that if she went to jail, she was a diabetic.

Plaintiff's MOTION IN LIMINI RE: ADMISSIBLE, PREJUDICIAL, BAD CHARACTER EVIDENCE OF DEBORAH BRAILLARD is presented to the Court.

Arguments of counsel.

The Court states the information is relevant, and believes there is probative value to the evidence of the victim's criminal history. The Court is not convinced that the use of presentence reports are going to be helpful, or that the reports outweigh the prejudicial effect.

IT IS FURTHER ORDERED allowing the introduction of the prior criminal history and allowing the allegations and the testimony of the drug use and alcohol use.

FURTHER ORDERED disallowing the introduction of the probation reports or the presentence reports. The nature of the charges shall be allowed, but without referring to them as felonies.

FURTHER ORDERED disallowing the references to the person that stated she urinated for the victim.

The Court states as to the argument that the drug use was a contributing factor in causing her death, which is the reason a request for the history was presented, the Court feels that argument would go to damages at this point, and not sure if it causation since the Court does not have enough evidence to determine if the report can be used for causation.

As to the evidence of the victim dealing drugs or other illicit activities, the Court states Judge O'Neil precluded the computer that would have had any information regarding that issue.

FURTHER ORDERED if there are witnesses who will testify that they witnessed the victim using and selling drugs, the Court will deal with those witnesses as they take the

stand. That issue goes to damages to how that lifestyle affected Jennifer Braillard, not as to how bad the victim was because she was selling drugs.

Plaintiff's MOTION IN LIMINI TO EXCLUDE DR. GREENBURG'S OPINION THAT PNUEMONIA WAS THE UNDERLYING CAUSE OF BRAILLARD'S DEATH is presented to the Court.

Arguments of counsel.

The Court states the initial review of the records in the documents of the testimony that Dr. Greenburg provided in the deposition, leads the Court to conclude that Dr. Greenburg is not a qualified expert and is excludable; therefore,

FURTHER ORDERED excluding Dr. Greenburg, the Court does not believe he is qualified to give the opinions that he has given, and is basing his opinions on assumptions and not specifically on evidence that he has, personal knowledge, or that he has any scientific support for.

The Court advises the parties that if they want a Fry Hearing, it will be granted, and will have to be done quickly, however, if the defendants are calling Dr. Greenburg, they do not get the second doctor.

FURTHER ORDERED if Dr. Greenburg will be called as a witness, the plaintiffs are entitled to have an expert review the studies that he has made and the studies he is relying on, which could create a time problem.

11:42 a.m. Recess.

1:32 p.m. Reconvene in Courtroom. All parties previously present are now present.

THE RECORD MAY SHOW the courtroom clerk at this time is **Anne Ross**.

Plaintiff's MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM ARGUING QUALIFIED IMMUNITY is presented to the Court.

Arguments of counsel.

Counsel for Plaintiff requests the Court withdraw the Motion In Limine to Preclude Defendant from Arguing Qualified Immunity.

FURTHER ORDERED Plaintiff's MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM ARGUING QUALIFIED IMMUNITY shall be withdrawn by request of counsel for Plaintiff.

The Court is presented with JOINT MOTION FROM THE DEFENDANTS TO BIFORCATE THIS TRIAL.

Arguments of counsel.

2:11 p.m. THE RECORD MAY SHOW the courtroom clerk now present is **Gina Laughlin.**

FURTHER ORDERED denying the Motion to Bifurcate the case.

MOTION TO STRIKE is presented to the Court.

Arguments of counsel.

FURTHER ORDERED allowing Wanda Echols to testify, but only if she is made available for interview or deposition within the next 3-5 days. If she is not interviewed and/or deposed by the end of five days, then she is out.

Counsel for plaintiff request the defendants prepare a full disclosure of Ms. Echols background, her knowledge of the case and what she will be testifying about.

FURTHER ORDERED directing the defendant to submit a curriculum vitae of Ms. Echols.

FURTHER ORDERED the defendant's shall make sure the material is emailed or faxed, no later than 5:00 p.m. Saturday, and within 3-5 days after received, by Tuesday or Thursday, the plaintiffs shall conduct their interview/deposition.

Counsel for plaintiff states they have no objections to defendant's PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM.

FURTHER ORDERED granting the Writ and formal WRIT OF HABEAS CORPUS AD TESTIFCANDUM is signed and filed this date.

Discussion of Court and counsel regarding issues for a Fry hearing.

The Court believes that the plaintiff should have an opportunity to review any articles or journalism that the doctor relies on. If the doctor refers to specific articles in his deposition, it shall be provided to the plaintiff to allow them to cross-examine at the Fry hearing.

Counsel for plaintiff states since they are requesting punitive damages, understands that they are not entitled to view financial statements today, however, request that Sheriff Arpaio, Officer Garfius, Diane Galaviz, Cincy Rodriguez, Dennis Liebert and Markwell, produce sealed personal sworn financial statements with their community assets and personal assets to the Court, prior to the trial.

Objections by counsel for defendants.

The Court states it does not want to cause a delay with the trial, and the most efficient means is to order the records be provided to Mr. Struck and he shall verify that he has been provided with a financial statement, which includes a detailed accounting of the personal community assets of the individual defendants, and if they become necessary, will provide them to the Court.

The Court suspects the request for the sealed financial documents will result in the filing of a Special Action to challenge the Court's ruling.

Upon agreement of the parties;

FURTHER ORDERED continuing this cause for TELEPHONIC HEARING on Friday, February 24, 2012 at 9:00 a.m, before the Honorable Gilberto V. Figueroa.

3:24 p.m. Hearing concludes.

**Mailed/distributed copy: 02/23/2012**

DANIEL P. STRUCK – minuteentries@swlfirm.com

MICHAEL C. MANNING
LESLIE E. O'HARA – mmanning@stinson.com

LISA WAHLIN – lwahlin@gbmlawpc.com
PAMELA A. HOSTALLERO – phostallero@gbmlawpc.com

**Office Distribution:**
**JUDGE/G FIGUERORA**