**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Ernest Joseph Atencio, et al., | ) | CIV. 12-2376-PHX-PGR |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| Sheriff Joseph Arpaio, et al., | ) ) | |
| Defendants. | ) ) | |

Before the Court is the Motion to Bifurcate, filed by "City Defendants" Patrick Hanlon, Nicholas French, and the City of Phoenix (Doc. 11) and joined by the "County Defendants" (Doc. 13).[1] Plaintiffs oppose the motion. (Doc. 16.) For the reasons set forth herein, the motion is granted.

**BACKGROUND**

On December 15, 2011, Ernest Marty Atencio ("Atencio") was arrested and transported to the Fourth Avenue Jail. Following a medical screening it was determined that Atencio would be placed in a safe cell.

Atencio was then taken to the acceptance area. Due to his erratic behavior, City Defendant Patrick Hanlon handcuffed him to a bench. Hanlon then escorted Atencio to a

---

[1] Hanlon and French are City of Phoenix police officers. The "County Defendants" are Joseph and Ava Arpaio, Jaime Carrasco, Adrian Dominguez, Christopher Foster, Anthony Hatton, Craig Kaiser, Anthony Scheffner, Jose Vazquez, Jason Weiers, Maricopa County, Ian Cranmer, William McLean, and Monica Scarpati. Defendants Marcoti, McLean, and Ian Cranmer are employees of County Health Services.

different area of the jail to proceed with booking. Atencio became noncompliant and physically aggressive. Hanlon and City Defendant Nicholas French, along with other detention officers, wrestled him to the ground. Defendant Jason Weiers deployed his taser. Eventually the officers subdued Atencio and took him to the safe cell where his clothes were removed. Officers re-entered the room approximately ten minutes later, concerned that Atencio was not breathing. Efforts to revive him failed.

On October 23, 2012, Plaintiffs filed a complaint in Maricopa County Superior Court.[2] The case was removed to this Court on November 6, 2012. Plaintiffs filed an amended complaint on May 3, 2013. (Doc. 50.)

## DISCUSSION

The complaint raises eight counts, including civil rights violations under 42 U.S.C. § 1983, arising from Atencio's death. (Doc. 50.) Count Eight alleges municipal liability, *see Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against Sheriff Arpaio and Maricopa County.[3] (Doc. 50, ¶¶ 94–99.) Defendants move to bifurcate trial, with the first trial dealing with individual liability to be followed, if constitutional violations are found, by a trial on Plaintiffs' *Monell* claims against the sheriff and the county.

Pursuant to Federal Rule of Civil Procedure 42(b), the Court may order a separate trial of any separate issue in the interest of convenience, to avoid prejudice, or for judicial economy. Fed. R. Civ. P. 42. The question of whether to bifurcate a trial is committed to the court's discretion. *See, e.g.*, *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001).

Defendants' arguments for bifurcation are premised on the principle, announced in *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam), that a claim of

---

[2] Plaintiffs include Atencio's parents and sons, and the personal representative of his estate.

[3] In *Monell* the Supreme Court held that a municipality can be sued under 42 U.S.C. § 1983 when execution of a government policy or custom results in a violation of constitutional rights. 436 U.S. 658.

1 municipal liability under *Monell* cannot stand without a showing that the individual officers
2 violated the plaintiff's constitutional rights. As the Court in *Heller* explained, "If a person
3 has suffered no constitutional injury at the hands of the individual police officer, the fact that
4 the departmental regulations might have authorized the use of constitutionally excessive
5 force is quite beside the point." *Id.*

Defendants argue that the individual officers would be prejudiced by evidence concerning the County's customs and practices, that such evidence is irrelevant to the claims against the officers, and that judicial economy is served by bifurcation. The Court agrees.

Plaintiffs' *Monell* claim alleges that Maricopa County and Sheriff Arpaio are deliberately indifferent to the medical needs of pretrial detainees, in violation of 42 U.S.C. § 1983. The complaint alleges that Sheriff Arpaio and the County "have a policy, practice, or custom of punishing pretrial detainees, subjecting them to the unreasonable and excessive use of force, depriving them of constitutionally required care, and/or ratifying such constitutional deprivations" and that "Sheriff Arpaio knew, or reasonably should have known, that his subordinates were engaging in conduct that would deprive [Atencio] of his constitutional rights and he failed to act to prevent these deprivations"; and that "despite the knowledge and notice set forth above, the County was deliberately and callously indifferent to the constitutional rights of those in their care, custody, and control." (Doc. 50, ¶¶ 95–98.)

The claims against City Defendants French and Hanlon are set forth in Counts Three, Four, and Five, alleging civil rights violations under § 1983 for unreasonable use of force and punishment, wrongful death, and for a violation of Plaintiffs' right to be free from interference with their right to family society and companionship of Marty Atencio. (Doc. 50, ¶¶ 51–85.) Specifically, Plaintiffs allege that French and Hanlon used excessive force in their interactions with Marty Atencio during the booking process. Plaintiffs claim that Hanlon used excessive force by "leading [Atencio] with his hands and arms bent in a position which caused [Atencio] pain. (Doc. 50, ¶ 12.) The complaint then alleges that Hanlon and French "began a physical struggle" with Atencio after he refused their request to remove his

- 3 -

left shoe to be put through the scanner. (*Id.*, ¶¶ 58–60.) According to the complaint, the "force used by Officer Hanlon and French was gratuitous and unreasonable," and their "unprovoked assault" led to a "Jailers' Riot" that ultimately resulted in Atencio's death. (*Id.*, ¶ 61.)

### Judicial Economy

Defendants argue that bifurcation will serve judicial economy because a separate trial on the issue of their individual liability will prove or dispose of a necessary element of Plaintiffs' *Monell* claims against the County. (Doc. 11 at 9.) Plaintiffs counter that a jury could find that Atencio's constitutional rights were violated as a result of the individual officers's acts pursuant to the County's unconstitutional "policies, procedures, customs or culture," even without a finding that Defendants were individually liable. (Doc. 16 at 8.) Therefore, according to Plaintiffs, evidence of those policies is relevant to all their claims, including the individual liability claims.

In support of this argument, Defendants cite *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2009). In *Thomas*, the Seventh Circuit concluded that *Heller* does not hold that a plaintiff can never succeed on a *Monell* claim against a municipality without first showing that an officer is liable to him for violating his rights under § 1983. *Id.* at 305.

*Thomas* is not persuasive on the issue of bifurcation in this case. In *Thomas*, a pre-trial detainee at Cook County Jail died a few days after being admitted. The decedent's mother sued individual correctional employees under § 1983 for deliberate indifference to her son's serious medical needs, and sued the Cook County Sheriff and Cook County under a *Monell* policy, practice, and custom theory. The Seventh Circuit concluded that it was possible that the individual defendants were not deliberately indifferent but rather could not respond properly because the County's policies prevented them from doing so. 604 F.3d at 305. Therefore, even if the individual defendants were not liable, the plaintiff could have suffered a constitutional injury inflicted by the County's policy.

In the present case, however, the only allegations against individual Defendants

- 4 -

involve the use of excessive force. In *Carr v. City of North Chicago*, 908 F.Supp.2d 926, 929–30 (N.D.Ill. 2012), the district court, finding *Thomas* distinguishable, granted bifurcation.

> Here, all of the claims against the Defendant Officers are contingent on the claim that they used excessive force against Mr. Hanna. If there was no excessive force, Mr. Hanna did not suffer an injury to his constitutional rights. If Mr. Hanna did not suffer an injury to his constitutional rights, then there is no constitutional harm that the Municipal Defendants could be held liable for. Therefore, Plaintiffs' claims against Municipal Defendants are wholly contingent on the excessive force claim against Defendant Officers. If the *Monell* claims are bifurcated and the Defendant Officers prevail, the time and expense involved in litigating the *Monell* claims will be saved. The liability issues in this case therefore favor bifurcating the *Monell* claims.

*Id.*

The Ninth Circuit also has recognized that "a plaintiff cannot establish municipal liability for excessive force 'when the jury exonerates the individual officers of constitutional wrongdoing.'" *Sarmiento v. County of Orange*, 496 Fed.Appx. 718, 720 n.2 (9th Cir. 2012) (quoting *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir.2002)); *see Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (holding that where the trier of fact found individual officers did not deprive plaintiff of Fourth Amendment rights, the trial court "correctly entered judgment" for municipality on municipal liability claim; distinguishing case where officer's exoneration based on qualified immunity); *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (finding the judge's decision to bifurcate the trial "eminently reasonable in the interests of judicial economy and avoiding possible juror confusion" and explaining that "it would be illogical to try the municipality first since its liability under § 1983 could not be determined without a determination of the lawfulness of the individuals' actions").

In *Wilkins v. City of Oakland*, No. C-01-1402-MMC, 2006 WL 305972, at *2 (N.D.Cal. February 8, 2006), the district court granted the defendants' motion to bifurcate the trial, with trial on the excessive force claims against the individual officers to proceed first, to be followed by trial on the *Monell* claim if the jury were to find an individual officer

violated the plaintiff's rights. The court explained that "evidence of a municipality's failure to provide training to or to sufficiently supervise an officer is not relevant with respect to the issue of whether such officer acted in an objectively reasonable manner in his/her use of force." *Id.*, at \*1. As in *Wilkins*, there is no overlap between the evidence concerning the allegations of excessive force against the individual Defendants and evidence related to the *Monell* claims against the County.

Here, all of Plaintiffs' claims are contingent on the use of excessive force. Without a finding that excessive force was used in violation of Atencio's constitutional rights, there can be no *Monell* claim against the County. *Id.* (explaining that "if the trier of fact finds the individual officers did not deprive the decedent of his Fourth Amendment rights, such finding is dispositive of plaintiffs' municipal liability claim"). Therefore, bifurcation of trial serves the purpose of judicial economy, because if the individual defendants prevail, the time and expense involved in litigating the *Monell* claims will be saved.

In addition, as Defendants argue, the institutional evidence against the County is both irrelevant to the claims of individual liability and, as discussed in more detail below, overly prejudicial. The City Defendants note that the City of Phoenix does not operate the Fourth Avenue Jail; nor does it supervise or have any control over the employees who work there. It does not provide any of the medical or mental health screening of arrestees, and has no responsibility over medical care at the jail. Therefore, the *Monell* claim relative to the operation of the jail, the training, the policies and procedures, and the adequacy of medical screening and care, has no bearing on the claims against the City Defendants. The evidence is not relevant to Plaintiffs' claims that the individual City Defendants utilized excessive force when interacting with Atencio.

**Prejudice**

The individual Defendants argue that they would be prejudiced by introduction of evidence relating to the *Monell* claim against the County. The Court agrees.

In addition to the allegations concerning the actions of City Defendants Hanlon and

- 6 -

French, the complaint sets forth a wide range of allegations against the County and its employees. The complaint alleges that detention officers Carrasco, Dominguez, Foster, Vazquez, Kaiser, and Weiers "dogpiled" Atencio; tased him "multiple times, including . . . in a manner close to the heart"; struck him in the face multiple times with a closed fist; assaulted him by using "excessive, gratuitous, and unreasonable" force while he was in the safe cell, including holding Atencio down, striking him, and using a knee; and failed to provide medical care despite "recognizing the extreme danger resulting from the beating and electrocution." (Doc. 50, ¶¶ 62–70.)

In addition to these allegations about the conduct of the individual defendants, the complaint alleges that the County enforced a "culture of cruelty" in the jails and was "deliberately and callously indifferent to the constitutional rights of those in their care, custody and control." (*Id.*, ¶ 98.) According to the compliant, the County "turned a blind eye towards the culture of cruelty and punishment Sheriff Arpaio has created in the County's jails," and this culture should have been known to the Sheriff and the County based upon prior consent decrees, reports, and court decisions. (*Id.* at ¶¶ 21–27.) The Court agrees that the admission of this *Monell*-related evidence poses an undue risk of prejudice to the individual Defendants.

Plaintiffs' *Monell* claims are based on what the complaint characterizes as a "long history of [] gratuitous and inhumane use of excessive force" in the Maricopa County jails. (Doc. 50, ¶ 23.) As the County Defendants note, the allegations in the complaint include "events that occurred more than 20 years ago, long before the individual defendants were employed with Maricopa County." (Doc. 13 at 2.)

In *Quintanilla*, the district court, "in the interest not only of convenience and judicial economy but also the avoidance of potential prejudice and confusion, bifurcated the trial of the individual police officers from the Chief and city." 84 F.3d at 356. The Ninth Circuit, relying on *Heller*, affirmed, explaining that "[a]dmitting evidence pertaining to the *Monell* issue could well have unfairly prejudiced the Chief and city and confused the jury as it

- 7 -

considered the individual officers' actions."

Other courts have bifurcated trial based on concerns about prejudice. *See, e.g.*, *Mineo v. City of New York*, No. 09-CV-2261-RRM-MDG, 2013 WL 1334322, at *1 (E.D.N.Y. March 29, 2013) (finding that "bifurcation will avoid prejudice to the individual officer. For example, potential evidence of other incidents that may be admissible solely against the City to prove *Monell* liability could dangerously infect the jury's consideration of the individual claim against [the] defendant."); *Readus v. Dercola*, No. 09-C-4063, 2012 WL 1533167, at *4 (N.D.Ill. May 1, 2012) (explaining that "presenting evidence to the jury regarding a citywide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case")*; Lopez v. City of Chicago*, No. 01-C-1823, 2002 WL 335346, at *2 (N.D.Ill. March 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants.").

In sum, as the district court noted in *Green v. Baca*, 226 F.R.D. 624, 633 (C.D.Cal. 2005):

> Cases in which courts have bifurcated whether there has been an underlying constitutional violation from *Monell* liability for trial have all involved claims against individual officers as well as against the municipality. Bifurcation is appropriate in such a situation to protect the individual officer defendants from the prejudice that might result if a jury heard evidence regarding the municipal defendant's allegedly unconstitutional policies.

The circumstances cited in these cases are present here. Bifurcation of the individual and *Monell* claims will prevent undue prejudice to the individual defendants.

## CONCLUSION

For the reasons set forth above, bifurcation is warranted under Rule 42(b) in the interests of judicial economy and to reduce the risk prejudice and confusion.

Accordingly,

IT IS HEREBY ORDERED granting Defendants' motion to bifurcate (Doc. 11). Plaintiffs' claims against the individual officers shall be tried first. If the trier of fact finds that one or more such individual defendants violated Atencio's constitutional rights, the trial will proceed before the same jury with respect to the municipal liability claim.

DATED this 24th day of September, 2013.

Paul G. Rosenblatt
United States District Judge

- 9 -