Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
**STRUCK WIENEKE & LOVE, P.L.C.**
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
kwieneke@swlfirm.com
cretts@swlfirm.com

*Attorneys for Defendants City of Phoenix, Patrick Hanlon and Nicholas French*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| ERNEST JOSEPH ATENCIO, surviving father of Ernest Marty Atencio, individually and on behalf of the following statutory beneficiaries of Ernest Marty Atencio: Rosemary Atencio, surviving mother of Ernest Marty Atencio; Joshua Atencio, surviving son of Ernest Marty Atencio; Joseph Atencio, surviving son of Ernest Marty Atencio; M.A., a minor and surviving son of Ernest Marty Atencio; and MICHAEL ATENCIO, Personal Representative of the Estate of Ernest Marty Atencio; and ROSEMARY ATENCIO, individually; JOSHUA ATENCIO, individually; JOSEPH ATENCIO, individually; and M.A., through his Next Friend, Eric Atencio, <br><br>                        Plaintiffs,<br><br>v.<br><br>Sheriff Joseph Arpaio and Ava Arpaio, husband and wife;<br>Maricopa County, a public entity;<br>Jaime Carrasco and Olivia Carrasco, husband and wife;<br>Adrian Dominguez and Samantha Dominguez, husband and wife;<br>Christopher Foster and Michelle Foster, husband and wife;<br>Anthony Hatton and Jaclyn Hatton, husband and wife;<br>Craig Kaiser and Karen Kaiser, husband and wife;<br>Anthony Scheffner and Rhealea Scheffner, husband and wife;<br>Jose Vazquez and Alma Vazquez, husband and | NO. 2:12-cv-02376-PHX-PGR<br><br>**THE CITY DEFENDANTS' MOTION TO STRIKE/EXCLUDE PLAINTIFFS' UNTIMELY DISCLOSED REBUTTAL EXPERT DR. TREPETA** |

wife;
Jason Weiers and Melissa Weiers, husband and wife;
Ian Cranmer, an unmarried man;
William McLean and Kelly Clark, husband and wife;
Monica Scarpati and Ariel Scarpati, wife and husband; City of Phoenix, a public entity;
Patrick Hanlon, an unmarried man;
Nicholas French, an unmarried man.

       Defendants.

  Plaintiffs have disclosed Dr. Trepeta as a causation "rebuttal" expert, but he cannot properly be considered one. His opinions relate to a key element of Plaintiffs' burden of proof—causation—and they should have been disclosed at the initial deadline for Plaintiffs' disclosure of expert testimony. Additionally, Dr. Trepeta's rebuttal report fails to comply with the requirements of Rule 26(a)(2)(B). For example, there is no disclosure of Dr. Trepeta's qualifications, or production of a curriculum *vitae*. For all Defendants know, Dr. Trepeta could be a practicing OBGYN. Dr. Trepeta's opinions/ testimony must be excluded.

## I.  FACTUAL BACKGROUND/PROCEDURAL HISTORY

  The Court issued its initial scheduling order On April 2, 2014. Dkt. # 32. In that Order, Plaintiffs' expert witness disclosure was set for November 25, 2013. The Defendants' disclosure was set for January 13, 2014. Rebuttal experts were to be disclosed by February 7, 2014. On October 15, 2013, the Court extended the expert disclosure deadlines, moving Plaintiffs' expert disclosure to December 23, 2013, Defendants' to February 10, 2014, and rebuttal experts to March 7, 2014. Dkt. # 104. On December 3, 2013, Plaintiffs moved to extend the expert disclosures. Dkt. # 118. The Court granted the request resetting Plaintiffs' expert disclosures to February 17, 2014, Defendants' to April 7, and rebuttal experts to May 2, 2014. Dkt. # 119. After the County changed counsel, another short extension of Defendants' expert deadline and the rebuttal deadline was granted, making Defendants' expert disclosures due April 21, 2014, and the rebuttal disclosures May 16, 2014. Dkt. #142.

On February 17, 2014, Plaintiffs disclosed the following retained experts: Ken Katsaris (jail expert- policy/procedure/*Monell*); Eldon Vail (prison expert- policy/procedure/*Monell,* use of force); Dr. Wilcox (causation, policy/procedure/*Monell*); Ron Bruno (use of force); Lawrence Herman (Physician Assistant related to Defendant Cranmer), Denise Panosky (nurse related to Defendant McLean); Robert J. Wimmer (mental health relating to Defendant Scarpati). Prior to this disclosure, Plaintiffs also listed as a witness and disclosed Dr. Stano, the Medical Examiner who performed the autopsy. Dr. Stano's deposition as taken months before Plaintiffs' expert disclosure deadline, and he was questioned extensively about the cause and manner of death—including the cardiac event and excited delirium. *See* deposition of Dr. Stano, p. 22, 31-34, 37, 45-46, 53-54, 100-102, Ex. 1. Apparently unhappy with the Medical Examiner's testimony—as it failed to establish causation— on May 19, 2014, Plaintiffs disclosed Dr. Trepeta's "rebuttal" expert report. *See* Ex. 2, email correspondence and attached rebuttal report of Dr. Trepeta.[1]

On May 27, 2014, in response to receiving the "rebuttal" report of Dr. Trepeta, the City Defendants served a subpoena for his file requesting it to be produced no later than June 9, 2014.[2] On June 4, 2014, Plaintiffs requested a 10-day extension for Dr. Trepeta to respond to the subpoena. On June 13, 2014, the City Defendants' counsel received a letter from Dr. Trepeta, where he outlined objections to the subpoena, but did not produce any non-objectionable responsive documents. At the request of Plaintiffs' counsel, the City Defendants' counsel provided an additional extension for Dr. Trepeta to respond and actually produce his file. On June 30, 2014, 18 days before the close of discovery—while the City Defendants' counsel was out of state as previously disclosed to Plaintiffs' counsel— Dr. Trepeta finally produced his file.

---

[1] On May 15, 2014, Plaintiffs requested, informally, that the City Defendants agree to a one business day extension to disclose the report of a pathologist.

[2] Prior to issuing the subpoena, the City Defendants also sent discovery, on February 21, 2013, asking for Plaintiffs to produce all of their expert's files. Defendants contend that this Request for Production should also have been supplemented, without the necessity for a subpoena.

The City Defendants set forth the timing of this production to illustrate the prejudice to Defendants. Indeed, Dr. Trepeta did not specifically, or clearly, outline those documents he reviewed/relied upon in rendering the opinions in his rebuttal report. Dr. Trepeta took a significant period of time to produce his file materials, placing Defendants and their experts at a disadvantage. This procedure was backwards. Defendants' experts should have had the benefit of review of Dr. Trepeta's report and file materials, before they even wrote their reports.

## II. LEGAL ARGUMENT

### A. The Disclosure Requirements

Fed. R. Civ. P. 37(c)(1) provides, "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1). . . unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 37(c)(1) gives teeth to the requirement that a party timely disclose its expert and the expert's report under Rule 26(a)(2)(B) "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The burden to show justification or harmlessness is on the party seeking to avoid sanctions. *Id.* at 1107.

If a court concludes that a discovery deadline violation is not substantially justified or harmless, it has "particularly wide latitude" in its discretion to "issue sanctions under Rule 37(c)(1)." *Yeti by Molly*, 259 F.3d at 1106. Rule 37(c) is intended to provide a "self-executing," "automatic sanction provid[ing] a strong inducement for disclosure of material." Fed.R.Civ.P. 37 advisory committee's note (1993). Because the rule incorporates the sanctions of Rule 37(b)(2)(A)(i)-(vi), a court may exclude entirely the testimony of an untimely disclosed expert witness. *See* Fed.R.Civ.P. 37(c)(1)(C), 37(b)(2)(A)(ii); *Yeti by Molly*, 259 F.3d at 1106 (citing *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001).

4

1          The Federal Rules require that an expert prepare a written report that includes (1) a complete statement of all of the opinions and the basis and reasons for them; (2) the facts considered by the witness in forming the opinions; (3) any exhibits that will be used to summarize or support the opinions; (4) the witness's qualifications including a list of publications authored within the previous 10 years; (5) a list of all other cases, in the previous 4 years, in which the witness has testified as an expert, either at trial or deposition; and (6) a statement of the compensation to be paid for the testimony. Fed.R.Civ.P. 26(a)(2)(B) (emphasis added). "The purpose of the expert disclosure rule is to 'provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed.Cir.2013) (citation omitted).

          Rule 26(a) expert reports must be "detailed and complete," not "sketchy and vague," and include "the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor." Fed.R.Civ.P. 26(a)(2), Advisory Committee's Note (1993); *Salado by Salado v. General Motors Corp.*, 150 F.3d 735, n.6 (7th Cir. 1998). "An expert report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial . . ." *Id*. Expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions. *Reed v. Binder,* 165 F.R.D. 424, 429 (D.N.J. 1996).

          If a party fails to comply with Rule 26(a), Fed. R. Civ. P., the improperly disclosed evidence is excluded unless the improper disclosure was either substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c)(1); *Yeti by Molly*, 259 at 1106. In this case, Plaintiffs have the burden to show justification or harmlessness. *Id*. at 1107. Further, Rule 26(a)(2)(D)(ii) emphasizes that a rebuttal expert "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." *See also TC Sys. Inc. v. Town of Colonie,* NY, 213 F.Supp .2d 171, 179 (N.D.N.Y.2002). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of

5

the evidence offered by an adverse party." *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001) (internal quotation marks and citation omitted). "Testimony offered only as additional support to an argument made in a case in chief, if not offered 'to contradict, impeach or defuse the impact of the evidence offered by an adverse party,' is improper on rebuttal. *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (emphasis added) (quoting *Grintjes*, 237 F.3d at 879).

### 1. *Dr. Trepeta's disclosure as a rebuttal expert is untimely, and not substantially justified.*

This Court's original Rule 16 Scheduling Order set disclosure deadlines for experts, adhering to the traditional sequence of requiring an initial expert disclosure by plaintiffs, the expert disclosure by defendants, and then any rebuttal expert disclosure coming last. This sequence was adhered to in the various amendments to the original Order. As the Ninth Circuit emphasized in a similar case involving a plaintiff's failure to timely disclose an expert report: "Parties must make these expert disclosures at the times and in the sequence that the court orders. Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples*, 644 F.3d 817, 827 (9th Cir. 2011) (citations omitted).[3] Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Id.* (quoting Fed.R.Civ.P. 37 advisory committee's note (1993)).

Plaintiffs' disclosure of Dr. Trepeta was not timely and he cannot properly be considered a rebuttal expert. This is because Plaintiffs bear the burden of proving causation—as an element of both their section 1983 and state law claims. Where

---

[3] In *Goodman*, the expert's identity as a "human factors" expert was timely disclosed, but his written report required by Rule 26(a)(B)(1) was not disclosed until the deadline for rebuttal experts. 644 F.3d at 821. The district court's order precluding Mr. Bakken from testifying as part of plaintiff's case-in-chief was affirmed by the Ninth Circuit. *Id.*

Plaintiffs bear the burden of proof, their causation expert cannot be a rebuttal expert.[4] Further, in light of the Plaintiffs' burden on causation—and the fact that their causation theory cannot be readily understood without expert testimony—it cannot be said that Plaintiffs did not anticipate the need for Dr. Trepeta's testimony to support their case. This is not, for example, a shooting case where the jury can clearly understand that the decedent died because he was shot. Atencio died from a cardiac event. He did not die because of Officer Hanlon's use of a control hold—that the ME found caused no injury. Nor did he die because of Officer French's hands-on use of force.[5] If Plaintiffs somehow believe that they can prove that hands-on-force caused death, they have to prove it with a causation expert.

Illustrative of this principle is *Matthews v. Pennsylvania Life Ins.Co.*, 2014 WL 2818661 (D.Utah 2012), where the court excluded a rebuttal expert report that was being used to "bolster Plaintiffs' case-in-chief." The report at issue concerned the issue of whether a disability was caused solely by the accident that was being litigated. In excluding the report, the Court noted that the issue of causation as related to the disability had been a "key issue in this case" from the outset. *Id.* at \*2. Because the issue raised in the report went "directly to Plaintiff's case-in-chief" it should have been included in the initial expert report. *Id.; see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.,* 73 F.3d 546, 571 (5th Cir. 1996) (a rebuttal date is not intended to provide an extension of expert disclosures so that a party may untimely deliver the lion's share of its expert information); *In re Apex Oil Co.*, 958 F.2d 243, 245 (8th Cir. 1992) (if the purpose of expert testimony is "to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one."); *Stanfield v. Dart*, 2013 WL 589222, at \*3 (N.D.Ill. Feb. 14, 2013) (holding that a

---

[4] That Plaintiffs actually understood the necessity of timely disclosing a causation expert is evidenced by the fact that they also disclosed another causation expert, Dr. Wilcox, at the deadline for initial expert disclosures.

[5] Notably, although Dr. Trepeta generically refers to cause of death, he fails to conduct any analysis of Officer Hanlon and French's use of force and connect that to the cause of death. As a result, his report fails to satisfy the requirements of Rule 26.

1  proper rebuttal report is "limited to contradicting and rebutting evidence on the same
2  subject matter identified by another party in its expert disclosures;" "[a] party may not
3  offer testimony under the guise of 'rebuttal' only to provide additional support for his case
4  in chief"); *Smith v. Wal-Mart Stores, Inc*., 2012 WL 4051925, at *1 (D.Nev. Sept. 13,
5  2012) (holding that a rebuttal expert disclosure is not intended to provide an extension of
6  the deadline by which a party may deliver the lion's share of its expert's information);
7  *Crowley v. Chait*, 322 F.Supp.2d 530, 551 (D.N.J.2004) (noting that expert rebuttal
8  testimony is not an opportunity to cure oversights in a party's case-in-chief).

9        There is no reason that Plaintiffs should not have disclosed Dr. Trepeta
10 initially as an expert. Instead, they made the tactical decision to lie in wait and sand-bag
11 Defendants at the rebuttal deadline. The prejudice of this decision is, per Ninth Circuit
12 precedent, "obvious." *Goodman*, 644 F.3d at 827 ("Staples made its decisions regarding
13 defense experts under the belief that [Bakken] would not be testifying in her case-in-chief.
14 Staples' experts developed their opinions and wrote their reports without knowing the
15 scope of [Bakken's] opinions…The district court found that this was "obvious prejudice,"
16 and we agree.").

17       Under Rule 37(c) and *Goodman*, Dr. Trepeta's proposed testimony is
18 untimely and improper. Accordingly, Defendants request an order from the Court
19 excluding him from testifying at trial.

20       2.   ***Dr. Trepeta's Report does not comply with Rule 26(a)(2)(B).***

21       A retained expert's report must contain, among other things: (1) the facts or
22 data considered by the witness in forming them; and (2) the witness's qualifications,
23 including a list of all publications authored in the previous 10 years. Fed.R.Civ.P.
24 26(a)(2)(B)(ii) & (iv). Dr. Trepeta's report is far from clear as it relates to what
25 documents he actually reviewed. Instead of listing the materials by reference to bates
26 labels—like all the Defendants' experts did—Dr. Trepeta generically states that he
27 "reviewed all the materials provided to me by your office concerning the death of Ernest
28 Atencio." These materials included, but are not limited to police reports, video discs,

medical records, autopsy materials, disclosures and expert reports." Ex. 2 at ATENCIOS02186. Thousands of pages of documents were disclosed in this case. The generic categories of documents identified by Dr. Trepeta do not put Defendants on appropriate notice of the facts he considered, or the documents that he actually reviewed, to come to his opinions.[6] Additionally, although he expresses medical opinions, he cites to no scholarly articles, treatises, or peer-reviewed literature as supportive of his opinions.

Further, other than the letterhead identifying him as a medical doctor, Dr. Trepeta identifies nothing about his qualifications that leads him to be competent as an expert. His qualifications appear nowhere in the report, or attached to it. There was no CV produced with the report, or in response to the subpoena. It is unknown if Dr. Trepeta has ever authored any publications. From the face of his report, there is nothing establishing that Dr. Trepeta has the qualifications necessary to offer opinions relating to any of the issues in this case. These deficiencies are violations of the requirements of Rule 26(a)(2)(B)(iv), which require exclusion of his opinions.

### 3. *At the Minimum, Dr. Trepeta cannot testify in Plaintiffs' case-in-chief and until the experts whose testimony he "rebuts" testify.*

Even if Dr. Trepeta is a proper rebuttal expert, which Defendants dispute, his disclosure as such limits him from presenting any testimony in Plaintiffs' case-in-chief. Instead, he may only testify in the Plaintiffs' rebuttal case and only if the expert—whose testimony he purports to rebut—testifies. The only expert mentioned in Dr. Trepeta's report by name is Dr. Stone. He mentions no other expert. *See Noffsinger v. Valspar Corp.*, 2011 WL 9795, at *6–7 (N.D.Ill. Jan. 3, 2011) (limited a rebuttal expert's opinions to his critique of defendants' experts and striking parts of the report that exceeded the scope of a proper rebuttal witness). Thus, Dr. Trepeta may not testify unless Dr. Stone testifies. *See Lindner v. Meadow Gold Dairies, Inc*., 249 F.R.D. 625, 636 (D. Hawaii 2008) (holding that rebuttal expert testimony must address the "same

---

[6] In response to the subpoena, he did not produce any letters to, or from, Plaintiffs' counsel indicating what documents had been provided to him.

9

subject matter" identified by the initial expert and that a rebuttal expert may only testify after the opposing party's initial expert witness testifies.

### III. CONCLUSION

Dr. Trepeta is not a proper rebuttal expert. Instead, his report is an attempt to bolster Plaintiffs' case-in-chief. Even if considered proper rebuttal, his report fails to provide the facts supporting his opinions, or set forth any of his qualifications to render them. Dr. Trepeta's opinions should be excluded entirely, but at the minimum he must be precluded from offering any opinions in Plaintiffs' case-in-chief.

DATED this 26th day of August, 2014.

**STRUCK WIENEKE & LOVE, P.L.C.**

By /s/ Christina Retts
Kathleen L. Wieneke
Christina Retts
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
*Attorneys for Defendants City of Phoenix, Patrick Hanlon and Nicholas French*

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system:

Michael C. Manning
Larry J. Wulkan
STINSON LEONARD STREET, LLP
1850 North Central Avenue, Suite 2100
Phoenix, AZ 85004-4584
*Attorneys for Plaintiffs*

David J. Don
LAW OFFICE OF DAVID J. DON, PLLC
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
*Attorney for Co-Plaintiff Amber Funck*

Lisa S. Wahlin
Andrew M. Kvesic
RYLEY CARLOCK & APPLEWHITE
One N. Central Ave., Ste. 1200
Phoenix, AZ 85004
*Attorneys for Defendants Arpaio, Carrasco, Dominguez, Foster, Kaiser, Scheffner, Vazquez and Weiers*

J. Daniel Campbell
Daniel J. O'Connor
Gary L. Popham, Jr.
O'CONNOR & CAMPBELL, P.C.
7955 South Priest Drive
Tempe, AZ 85284
*Attorneys for Defendants Maricopa County, Cranmer, Scarpati, and McLean*

Sarah L. Barnes, Esq.
BROENING, OBERG, WOODS & WILSON, PC
1122 E. Jefferson
Phoenix, AZ 85036
*Attorneys for Defendants Hatton*

By: /s/ Christina Retts

2936056.1