LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
POST OFFICE BOX 20527
PHOENIX, ARIZONA 85036
TELEPHONE: (602) 271-7700
FACSIMILE: (602) 258-7785
Sarah L. Barnes /Bar No. 020362
E-mail: slb@bowwlaw.com

Attorneys for Defendant Anthony Hatton

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ernest Joseph Atencio, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Sheriff Joseph Arpaio, *et al.*<br><br>Defendants. | NO. 2:12-cv-02376-PHX-PGR<br><br>**HATTON DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendants Anthony and Jaclyn Hatton, ("Hatton Defendants"), through their attorney undersigned, hereby submits their Statement of Facts ("SOF") in support of their separately filed Motion for Summary Judgment.

1. Plaintiffs' claims against Defendant Hatton stem from his involvement with Ernest Marty Atencio on December 15-16, 2011, in the search area (known as the "line scan room") and then a safe cell, at the 4th Avenue Jail, after Atencio had been arrested for assault. *See* Plaintiffs' First Amended Complaint ("FAC"), pp. 9-13, ¶¶ 64, 70,[1] Dk. 50.

2. After being escorted into the search area (also known as the "line scan

---

[1] The use of the fist strikes in the line scan and the knee pin in the safe cell are the two uses of force complained of against Hatton (although the complaint indicates several knee strikes, there is no evidence of anything beyond pushes with his hand and then one knee pin). *See* ¶ 15, *infra.*

room") to be searched, the City of Phoenix ("C.O.P.") police officers initiated physical contact with Atencio when he refused to remove his shoe, took a threatening stance and told them "fuck you, come get it;" the officers struggled to subdue Atencio because he resisted and fought them with extreme strength, even after being tased. Transcript of Deposition of Officer French, relevant portions of which are attached hereto as Exhibit 1, at pp. 89:20-91:16; 97:8-98:14; Transcript of Anthony Hatton Deposition, Vol. I, relevant portions of which are attached hereto as Exhibit 2, at pp. 23:9-24:19; 27:8-28:16; Interview Statements of Anthony Hatton, relevant portions of which are attached hereto as Exhibit 3, at pp. 9-10; Transcript of Interview Statements of Sergeant Weiers, relevant excerpts of which are attached hereto as Exhibit 4, at pp. 2-3; 4-5; 8-9.

3. While other officers physically attempted to take control of Atencio, Officer Hatton initially took a position of observation – watching the officers attempt to control him. Report of Mark Zbojniewicz, p. 6 relevant portions of which are attached hereto as Exhibit 5; Video of Line Scan Room, attached as Exhibit 16 to C.O.P Defendants' Statement of Facts In Support of Motion for Summary Judgment ("C.O.P. SOF Ex. 16").[2]

4. Officer Hatton did not make physical contact with Atencio or move in to assist the other officers until approximately 46 seconds from the time the officer first made physical contact with Atencio. *Id.*

5. The struggling and resistance continued and Atencio was tased by Weiers, but continued to resist being handcuffed; sixty three (63) seconds after being taken to the ground by the other officers, Officer Hatton then delivers three (3) short, linear strikes while leaning down over other officers to stop Atencio's active aggression, as well as to

---

[2] Rather than submitting multiple video discs, Hatton refers to the C.O.P. video disc of the line scan room, although their video does contain two colored dot indicators of which officers are the C.O.P. officers. Hatton can be readily identified, and there is no dispute about who he is, as the bald, Caucasian, detention officer with his back to the far door at the beginning o f the footage, and who is wearing the dark coat that can be later seen to have "Sheriff" written on the back. Ex. 6, *infra,* at p. 33:7-9.

1  get him to release Hatton's wrist, which Atencio had grabbed during the struggle causing Hatton pain. *Id.;* Transcript of Anthony Hatton, Vol. II, relevant portions of which are attached hereto as Exhibit 6, at pp. 21:6-19; 22:3-7; 47:11-19; 48:4-13.

6. And it was after the third of three (3) fist strikes that Atencio let go of his hold on Officer Hatton, who de-escalated his force, although Atencio still continued to actively resist by struggling. Ex. 5, pp. 5-6; C.O.P. SOF Ex. 16.

7. Atencio struggled with officers for approximately 109 seconds prior to the strikes and about 33 seconds after the strikes, at which time the officers are finally able to handcuffed Atencio. *Id*.

8. Not only did Hatton confirm that Atencio grabbed his wrist and would not let go, but Sergeant Weiers also heard officers saying that Atencio was able to grab a hold of them, kick a lieutenant and swing around the loose handcuff that was only on one hand. Ex. 3, at pp. 9-10; Exhibit 4, at p. 4-5; Deposition Transcript of Sgt. Weiers; p. 110:24–111:2, relevant portions of which are attached hereto as Exhibit 7.

9. Other officers have confirmed that Atencio was continuing to struggle (after being tased) and his hands were free, which he was using not only to resist but also to pull the taser probes out himself; they were not handcuffed or outstretched. Exs.1-4; Ex. 7 at p. 110:24-111:2.

10. Atencio also threatened after he was tased that he was going to get them for doing that to him. Ex. 1, at pp. 90:4-91:16.

11. Atencio even continued to kick at the officers after they finally did handcuff him shortly after Hatton's fist strikes. *See* C.O.P. SOF, ¶ 21.

12. Hatton has unequivocally stated that he did not beat Atencio and had no ill will toward him; he did not even have any interactions with him other than walking behind him into the line scan room and then observing struggle with other officers. Ex. 2, at p. 35:20-21; Ex. 6 at p. 19:6–20:2.

13. The fist strikes attributed to Hatton were deemed reasonable and appropriate by Internal Affairs and consistent with County policies, and both the fist strikes and knee pin were deemed reasonable and consistent with policies and standards of care for use of force, as well as by expert Mark Zbojniewicz. *See* Confidential Internal Affairs Investigative Report, relevant portions of which are attached hereto as Exhibit 8, p. 01773; Ex. 5, at p.6.

14. After he was subdued, officers carried Atencio into a safe cell, where the officers held Atencio down to remove his clothing; Atencio continued to struggle and resist. Ex. 5, at pp. 14-15; Ex. 6, at pp. 35:20-36:7; Ex. 4, at p. 8.

15. In the safe cell, Hatton tried pushing Atencio down first using his hands on Atencio's shoulder, so that the other officers could remove his handcuffs and get his shirt off; Hatton then pinned Atencio's shoulder down with his knee and some of his weight to push him down flat and force his hands out from under him, which allowed the other officers to remove the handcuffs and his shirt, which they were having trouble doing. Ex. 4, at p. 8; Ex. 5, at pp. 14-15; Ex. 6, at pp. 35:20-36:7; 38:19–39:1; 39:7-12; 40:7-13; Ex. 7, at p. 121:24–122:2.

16. Officers then backed out of the safe cell, and after several minutes the medical staff noticed that Atencio did not appear to be breathing; they entered the cell and officers began CPR, and Atencio was then transported to the hospital where he later died. Ex. 7, at p. 134:12-25; 137:4-8; *See* Report of Autopsy, at p. 4, relevant portions of which are attached hereto as Exhibit 9.

17. Dr. Stano, the Maricopa County Medical Examiner who conducted the autopsy on Atencio, determined that the cause of death was acute psychosis, law enforcement subdual and multiple medical problems, but that the manner of death was undetermined. Ex. 9, at p. 1.

18. When questioned, Dr. Stano clarified that the law enforcement subdual to

which he referred would be the chokehold, prone placement, restraint, taser and handcuffs; he did not include Hatton's fist strikes. *See* Deposition Transcript of William Stano, p. 92:10-19, relevant portions of which are attached hereto as Exhibit 10.

19. Further, Dr. Stano said that he does not know which caused Atencio's heart to stop, but that the "causes" he identified were simply risk factors that could have contributed to his death in any number of percentages or combinations and not one was more likely than another. *Id.* at p. 77:10-20.

20. Plaintiffs' proffered expert on Hatton's use of force, Ron Bruno, did not even review any of Maricopa County Sheriff's Office's use of force policy, the law governing uses of force, the IA findings, or any of the testimony or interviews of the other officers who were hands-on with Atencio besides Hatton and Weiers. *See* Ron Bruno Report, pp. 6-7, relevant portions of which are attached hereto as Exhibit 11; Excerpts of Deposition Transcript of Ron Bruno, pp. 24:25–25:17; 31:8-10; 68:12-18; 71:9-12; 71:18-20; 89:15-18; 98:16–99:2; 99:14-18; 122:19–123:2; 159:16–161:6; 164:6-14; 173:1-12; 181:25; 182:20–183:9, relevant portions of which are attached hereto as Exhibit 12.

21. Bruno also admitted in his deposition that he could not see Atencio or his hands under the group of officers in the line scan room, or whether Atencio had a hold of Hatton's wrist; even Officer Weiers stated he couldn't barely see through all the bodies and he was hands-on. Ex. 11, at pp. 185:18-186:4; 186:18-24; Ex. 7. at p. 92:4-7.

22. Bruno also admitted he has no recent training in use of force or defense tactics, never worked in a detention or booking facility, no special education or knowledge in use of force, and he is simply a patrol officer. *Id.* 28:11-17; 31:8-32:8; 38:6-10; 44:13-15; 159:16–160:1; 160:21–161:6; 163:7-164:5.

23. Plaintiffs' counsel has acknowledged that Hatton had no idea that Atencio was suffering from any mental illness. Ex. 6, at pp. 23:6-24; 22.

RESPECTFULLY SUBMITTED this 26th day of September, 2014.

                        **BROENING OBERG WOODS & WILSON, P.C.**

                        By    s/ Sarah L. Barnes
                               Sarah L. Barnes
                               *Attorneys for Defendant Anthony Hatton*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael C. Manning
Larry J. Wulkan
STINSON LEONARD STREET
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004-4584
*Counsel for Plaintiffs*

Lisa S. Wahlin
Andrew M. Kvesic
RYLEY CARLOCK & APPLEWHITE
One N. Central Ave., Suite 1200
Phoenix, AZ 85004
*Counsel for Arpaio, Carrasco, Dominquez, Foster,
Kaiser, Scheffner, Vazquez and Weiers*

Christina Gail Retts
Kathleen L. Wieneke
STRUCK, WIENEKE & LOVE, PLC
3100 W. Ray Road, Suite 300
Chandler, AZ 85226
*Counsel for City of Phoenix, Hanlon and French*

Gary L. Popham, Jr.
J. Daniel Campbell
Daniel L. O'Connor
O'Connor & Campbell, P.C.
7955 S. Priest Drive
Tempe, AZ 85284
*Counsel for Maricopa County, Cranmer, McLean and Scarpati*

s/ Kathy Lake

S:\SLB\Hatton\Pleadings\Hatton Defendants' SOF ISO Motion for Summary Judgment.doc